

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-21-00047-CV
_____

JEFFREY ALLEN ROGERS, Appellant

V.

KIMBERLY ANNETTE COSLETT, RALPH MILTON SUDDATH
AND POINTBANK, Appellees

On Appeal from the 462nd District Court
Denton County, Texas
Trial Court No. 19-10983-362

Before Morriss, C.J., Stevens and Carter,* JJ.
Opinion by Chief Justice Morriss

_____

*Jack Carter, Justice, Retired, Sitting by Assignment

# OPINION

This family dispute out of Denton County[1] involves how a tract of residential property—"heirs' property" subject primarily to Chapter 23A of the Texas Property Code—is to be sold in a partition sale and how the net proceeds are to be distributed to successors in interest. From judgment on competing motions for summary judgment, this appeal was brought.

The marriage between Linda and Ray Rogers was her second marriage, into which she brought three children, Kimberly Annette Coslett, Ralph Milton Suddath, and Scott Mitchell Suddath. To the new marriage was born another child, Jeffrey Allen Rogers. Linda died intestate in February 2016. Her survivors entered into a family settlement agreement (Agreement) in June 2016, providing for the division of Linda's estate, including a tract of residential real property we will call Lot 49,[2] the tract at the center of this dispute. Under the Agreement, it was agreed that Lot 49 would at that point be owned 12/16 by Ray, 1/16 by Kimberly, 1/16 by Scott, and 2/16 by Ralph. Sometime after the Agreement, Jeffrey obtained deeds conveying to him the interests of Ray, Scott, and Ralph, leaving Lot 49 owned 15/16 by Jeffrey and 1/16 by Kimberly.

An additional complication was introduced by the procedural history of this matter. An earlier lawsuit had been filed by Ray, Scott, and Jeffrey in the 462nd Judicial District Court of Denton County (462nd Court), but later had been dismissed before all parties had been joined.

---

[1]Originally appealed to the Second Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. We follow the precedent of the Second Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

[2]Lot 49 was described in the Agreement as "Lot 49 in Block 1 of Cypress Point Estate, Phase V, an Addition to the City of Corinth, Denton County, Texas[,] according to the map thereof recorded in Volume P, Page 349 of the Map Records of Denton County, Texas."

After dismissal of the first suit, a second suit was filed in the 362nd Judicial District Court of Denton County (362nd Court), but then transferred to the 462nd Court, since the 462nd Court was familiar with the matter. Finally, the case was transferred to the 431st Judicial District Court of Denton County (431st Court) just days before the 462nd Court granted the summary judgment favoring Kimberly and awarding her attorney fees.

Jeffrey appeals, contending that the trial court erred by transferring the suit to the 462nd Court, by granting Kimberly's motion for summary judgment, by failing to order a further appraisal of Lot 49, by failing to order that the proceeds from the sale of Lot 49 be placed into the registry of the court and thereafter distributed, by dismissing his fraudulent-lien claim against Kimberly, and by awarding Kimberly attorney fees.

We affirm the trial court's order in part, reverse and render in part, and reverse and remand in part because we hold that (1) the 462nd Court had authority to issue the instant judgment, (2) the judgment must account for post-Agreement transfers, (3) the trial court must receive a report of a sale and distribute its net proceeds, (4) on remand, Lot 49's value must be determined, and (5) on remand, the fraudulent-lien claim should be resolved and attorney fees reassessed.

In addition to seeking a partition sale of Lot 49, which the plaintiffs valued at $275,000.00, the second lawsuit asserted claims against Kimberly and Ralph for breach of fiduciary duty, the filing of a fraudulent lien, common-law and statutory fraud, and breach of contract. PointBank was a named defendant because it had an active judgment lien against any non-exempt real property owned by Ralph. Ralph was served by publication and did not

3

participate in the lawsuit. Ray died on February 14, 2020, and the suit proceeded with Jeffrey, Ray's son, and sole heir, prosecuting the action in both Ray's name and his own.

Kimberly moved for no-evidence and traditional summary judgment, arguing that she was entitled to judgment as a matter of law and that there were no issues of material fact regarding Lot 49's status as heirs' property, the terms of the Agreement, the Agreement's stated division of ownership, and the value of Lot 49. Specifically, Kimberly agreed with the plaintiffs' $275,000.00 estimate of Lot 49's value, agreed that Lot 49 should be partitioned by sale, and argued that she was entitled to judgment as a matter of law, because under the terms of the Agreement, the parties' respective ownership rights to Lot 49 were that Jeffrey owned 12/16, she owned 1/16, Scott owned 1/16, and Ralph owned 2/16 (1/8). PointBank adopted Kimberly's motion. Jeffrey and Scott responded to the motion and disputed Kimberly's ownership claims. Jeffrey filed a competing motion for summary judgment.

On January 15, 2021, the 462nd Court transferred the case to the 431st Court. However, four days later, on January 19, 2021, Kimberly's motion for summary judgment was granted by the 462nd Court, the Honorable Lee Ann Breading presiding. The motion for a new trial filed by Jeffrey and Scott was denied by operation of law. Jeffrey appealed from the 462nd Court's order.[3]

---

[3]Scott did not file a notice of appeal.

*(1)    The 462nd Court Had Authority to Issue the Instant Judgment*

Jeffrey contends that (a) the 362nd Court abused its discretion by transferring the case to the 462nd Court and (b) the 462nd Court erred by entering the final judgment in the case after it had been transferred to the 431st Court.

Transfer number one happened this way.  On February 27, 2020, the 362nd Court transferred the case to the 462nd Court after finding that

> the parties and cause of action in [the] case [were] the same or substantially similar to those in cause 18-10743-211.  Judge Breading of the 462nd [Court] held various hearings in the previously filed case.  Therefore, in the interest of judicial economy and to avoid conflicting rulings, judgments, or orders, the Court [transferred the] case from the 362nd Judicial District Court to the 462nd Judicial District Court.

Jeffrey contends that the trial court erred by transferring the case to the 462nd Court.  But that contention by Jeffrey was not preserved for our review.

To preserve a complaint for our review, a party must first present to the trial court a timely request, objection, or motion stating the specific grounds for the desired ruling if not apparent from the context.  TEX. R. APP. P. 33.1(a)(1).  Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule.  TEX. R. APP. P. 33.1(a)(2).  Here, the case was transferred to the 462nd Court in February 2020, and for the next year, Jeffrey filed multiple pleadings in that court, but he made no objection to the transfer until the motion for a new trial he filed in February 2021, after the court had granted Kimberly's motion for summary judgment.  An objection not occurring until a year after the transfer and final disposition of the case is

5

untimely, and therefore, this issue was not preserved for our review. *See* TEX. R. APP. P. 33.1(a)(1).

The other transfer happened this way. On January 15, 2021, the 462nd Court transferred the case to the 431st Court. However, four days later, on January 19, 2021, Kimberly's motion for summary judgment was granted by the 462nd Court. Jeffrey argues that, because the case had already been transferred to the 431st Court, the 462nd Court erred by entering a final order in the case.[4]

Transferring a case does not require a formal assignment or written order because trial courts have "broad discretion to exchange benches or transfer cases." *In re Houston Lighting & Power Co.*, 976 S.W.2d 671, 673 (Tex. 1998) (orig. proceeding) (quoting *European Crossroads' Shopping Ctr. v. Criswell*, 910 S.W.2d 45, 52 (Tex. App.—Dallas 1995, writ denied)). Rule 330(e) of the Texas Rules of Civil Procedure provides:

> Where in such county there are two or more district courts having civil jurisdiction, the judges of such courts may, in their discretion, exchange benches or districts from time to time, and may transfer cases and other proceedings from one court to another, and any of them may in his own courtroom try and determine any case or proceeding pending in another court without having the case transferred, or may sit in any other of said courts and there hear and determine any case there pending, and every judgment and order shall be entered in the minutes of the court in which the case is pending and at the time the judgment or order is rendered, and two (2) or more judges may try different cases in the same court at the same time, and each may occupy his own courtroom or the room of any other court. The judge of any such court may issue restraining orders and injunctions returnable to any other judge or court, and any judge may transfer any case or proceeding pending in his court to any other of said courts, and the judge of any court to which a case or proceeding is transferred shall

---

[4]As with all of Jeffrey's points of error, Kimberly summarily argues that Jeffrey failed to preserve this argument for appeal. However, even if preservation was needed, Jeffrey raised the issue in his motion for a new trial, which was overruled by operation of law. *See* TEX. R. APP. P. 33.1(a), (b). Therefore, this issue was preserved for appellate review.

6

> receive and try the same, and in turn shall have power in his discretion to transfer any such case to any other of said courts and any other judge may in his courtroom try any case pending in any other of such courts

TEX. R. CIV. P. 330(e). Accordingly, we review a trial court's decision to transfer a case, exchange benches, or hold court for each other for an abuse of discretion. *See id.*; *European Crossroads' Shopping Ctr. v. Criswell*, 910 S.W.2d 45, 51 (Tex. App.—Dallas 1995, writ denied). A trial court abuses its discretion when it does not follow guiding rules and principles and reaches an arbitrary and unreasonable decision. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding); *Flores v. Fourth Court of Appeals*, 777 S.W.2d 38, 41–42 (Tex. 1989) (orig. proceeding).

Jeffrey contends that the 462nd Court abused its discretion because there is no transfer order noting a transfer of the case back to the 462nd Court, and even if Judge Breading could hear the case and enter a final order, error occurred because the final order was not "entered into the minutes of the [431st Court] in which the case [was] pending at the time the . . . order [was] rendered." *See* TEX. R. CIV. P. 330(e). Here, Denton County has two or more district courts with civil jurisdiction, and therefore, under Rule 330(e), Judge Breading was free to sit in her own courtroom, hear the case even though it was pending in the 431st Court, and enter a final order in the case. *See* TEX. R. CIV. P. 330(e). Jeffrey also argues that the order was not entered into the minutes of the 431st Court, but this argument lacks merit because the record does not contain the minutes of the 431st Court or the court's docket sheet for this case. *See id.* Therefore, this point of error is overruled.

*(2)     The Judgment Must Account for Post-Agreement Transfers*

The parties disagreed on how the Agreement divided the ownership interests in Lot 49 and how the proceeds of Lot 49's sale should be distributed. To resolve that disagreement, the parties filed competing motions for no-evidence and traditional summary judgment, asking the trial court to affirm their respective interpretations. The trial court granted Kimberly's motion for summary judgment and, although it is not explicitly stated, necessarily overruled Jeffrey's motion. The trial court found that the Agreement was "clear and unambiguous" and that it divided Lot 49's ownership as follows:

1.     Ray Allen Rogers (now Jeffrey Allen Rogers as a result of a deed) owns 12/16.

2.     Kimberly Annette Coslett owns 1/16.

3.     Scott Mitchell Suddath owns 1/16.

4.     Ralph Milton Suddath owns 2/16.

In its ruling, the court ordered that Lot 49 be sold and the proceeds distributed as per the terms of the Agreement above. Jeffrey contends that Kimberly's motion for summary judgment was granted in error and his motion was denied in error.

A traditional motion for summary judgment is granted only when the movant establishes that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). An appellate court reviews de novo the grant or denial of a motion for summary judgment. *Id.* Where, as here, both parties file motions for summary judgment and the court grants one and overrules the other, we consider both sides' summary judgment evidence and

8

determine all questions presented, and if the trial court erred, we render the judgment the trial court should have rendered. *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007); *Comm'rs Court v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997); *Peterson, Goldman & Villani v. Ancor Holdings, LP*, 584 S.W.3d 556, 562 (Tex. App.—Fort Worth 2019, pet. denied).

A no-evidence summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment that we apply in reviewing a directed verdict. *Marts ex rel. v. Transp. Inc. Co.*, 111 S.W.3d 699, 703 (Tex. App.—Fort Worth 2003, pet. denied). We review the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 208 (Tex. 2002); *Morgan v. Anthony*, 27 S.W.3d 928, 929 (Tex. 2000). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied).

The parties do not dispute that Lot 49 is heirs' property under Chapter 23A of the Property Code; that, at the time of the Agreement, it had been the community property of Ray and Linda; that the Agreement divided the ownership of Lot 49; or that Lot 49 should be partitioned by sale. The parties primarily disagree on the meaning and effect of the Agreement. Under the terms of the Agreement, (1) Ray received an "[u]ndivided one-half (1/2) community property share" of Lot 49 and "[a]n additional undivided one-fourth (1/4) community property share" of Lot 49, (2) Kimberly received "[a]n undivided one-eighth (1/8) share of Decedent's

9

one-half (1/2) community property share" of Lot 49, and (3) Scott received "[a]n undivided one-eighth (1/8) share of Decedent's one-half (1/2) community property share" of Lot 49. The Agreement did not specifically award any share of Lot 49 to Ralph, but it did award him "the residue of Decedent's estate after all the bequest and distributions ha[d] been made."

We affirm the trial court's order regarding the Agreement's division of ownership. The Agreement's pertinent language is plain and unambiguous, and it states that Ray owned 12/16, Kimberly owned 1/16, and Scott owned 1/16. Because the Agreement distributed only 14/16 of the ownership of Lot 49, the remaining 2/16 interest passed to Ralph with the residue of the estate. The parties do not dispute that Ray had conveyed his ownership interests to Jeffrey or that, on Ray's passing on February 14, 2020, Jeffrey was fully vested in Ray's 12/16 ownership of Lot 49.

However, the trial court erred in ordering that the proceeds of the sale be distributed as per the terms of the Agreement because the summary judgment evidence showed that the various ownership interests in Lot 49 had changed since the execution of the Agreement.[5] Jeffrey's first amended motion for summary judgment referenced, and had attached to it, several deeds, and Kimberly did not object to that summary judgment evidence. In a deed dated September 8, 2020, Scott conveyed his 1/16 ownership interest in Lot 49 to Jeffrey. Also attached to the motion were deeds and pleadings showing that Jeffrey essentially purchased Ralph's 1/8 ownership interest in Lot 49 from PointBank, the holder of the judgment lien against Ralph's

---

[5]Kimberly summarily contends that Jeffrey failed to preserve this argument for review. However, this issue was raised in Jeffrey's amended motion for summary judgment. *See* TEX. R. CIV. P. 166a. The trial court necessarily rejected this argument by granting Kimberly's motion for summary judgment.

interest. The attachments included (a) an order from the County Court at Law No. 2 of Denton County ordering that, in partial satisfaction of his debt to PointBank, Ralph's 1/8 interest in Lot 49 "be seized by and turned over to the Turnover Receiver, James N. Richards" and (b) a Special Warranty Deed from that receiver conveying Ralph's 1/8 interest in Lot 49 to Jeffrey. As per the conveyances, Jeffrey acquired Scott's 1/16 ownership interest and Ralph's 1/8, which, in addition to his 12/16 interest from Ray, vested him with 15/16 ownership interest in Lot 49. Therefore, the trial court erred in its distribution of the sale proceeds. Accordingly, we partially sustain this point of error, reverse this portion of the trial court's order, and render an order that the proceeds of Lot 49's sale, after closing fees and commissions are paid, should be distributed 15/16 to Jeffrey and 1/16 to Kimberly.

*(3)    The Trial Court Must Receive a Report of Sale and Distribute Its Net Proceeds*

Jeffrey also contends[6] that the trial court erred by failing to order that (a) the appointed real estate broker comply with Chapter 23A's requirements to file a report with the court and (b) the proceeds of sale be deposited in the registry of the court for distribution.[7]

---

[6]Kimberly contends that Jeffrey failed to preserve his fourth point of error for appeal. However, Jeffrey requested in his motion for summary judgment that the partition comply with Chapter 23A, and his request was necessarily denied by the trial court's final order. Furthermore, Jeffrey also raised the issue in his responsive pleading to the judgment, i.e., the motion for a new trial. *See* TEX. R. APP. P. 33.1(a), (b). Therefore, this issue was preserved for appellate review.

[7]Jeffrey also argues that the trial court erred by failing to issue two separate, final orders as is customary in partition sales. We disagree. Unlike the general partition sale provisions of Chapter 23 where the commissioners' valuation of the property must be approved by the court prior to sale, a broker's sale under Section 23A.010 can be completed without court approval, when the price meets the court's valuation. Here, the court had already determined the property's value, ownership, and the necessity of partition by sale, thereby eliminating the necessity of separate orders. Neither Chapter 23A in general, nor Sections 23A.010–011 in particular, require the broker's report to be approved by the court before the sale is completed. TEX. PROP. CODE ANN. §§ 23A.001–.013 (Supp.). In fact, Section 23A.010(c) states that, when the broker receives an offer to purchase the property for at least the determined value, the broker shall issue a report to the court under 23A.011, and "the sale may be completed in accordance with state law other than this chapter." TEX. PROP. CODE ANN. § 23A.010(c)(2).

11

The broker should file a report of sale. When an appointed broker receives an offer to purchase the property for at least the court's previously determined value, the broker is required to file a report in accordance with Section 23A.011. Section 23A.011 states:

> (a) Unless required to do so earlier by other law governing the partition of real property, a broker appointed under Section 23A.010(b) to offer heirs' property for open-market sale shall file a report with the court not later than the seventh day after the date an offer is received to purchase the property for at least the value determined under Section 23A.006 or 23A.010.
>
> (b) The report required by Subsection (a) must contain the following information:
>
> > (1) a description of the property to be sold to each buyer;
> >
> > (2) the name of each buyer;
> >
> > (3) the proposed purchase price;
> >
> > (4) the terms and conditions of the proposed sale, including the terms of any owner financing;
> >
> > (5) the amounts to be paid to lienholders;
> >
> > (6) a statement of contractual or other arrangements or conditions of the broker's commission; and
> >
> > (7) other material facts relevant to the sale.

TEX. PROP. CODE ANN. § 23A.011. Jeffrey contends that the order fails to require the broker to comply with Sections 23A.010 and 23A.011.

Here, the order does not specify that the broker comply with the provisions of Chapter 23A. Specifically, the order neither requires the broker to file a report with the court nor specifies what the report is to contain as is required under Section 23A.011, subsections (a) and

12

(b).  TEX. PROP. CODE ANN. § 23A.011.  Therefore, we sustain this point of error, reverse this portion of the order, and render an order that requires the broker to comply with the provisions of Sections 23A.010 and 23A.011.

Additionally, the net proceeds of sale are to be paid into the registry of the trial court. Generally, the provisions of Chapter 23 of the Texas Property Code and the Texas Rules of Civil Procedure govern partition actions.  *See* TEX. PROP. CODE ANN. § 23.001.  However, if the court determines that the property to be partitioned is heirs' property, it "must be partitioned under" Chapter 23A.  TEX. PROP. CODE ANN. § 23A.003(a).  Chapter 23A "supplements Chapter 23 and the Texas Rules of Civil Procedure governing partition of real property."  TEX. PROP. CODE ANN. § 23A.003(b).  To the extent any provision of Chapter 23A is inconsistent with those of Chapter 23 and/or the Texas Rules of Civil Procedure, Chapter 23A governs.  TEX. PROP. CODE ANN. § 23A.003(b); *see Sw. Bank v. Info. Support Concepts*, 85 S.W.3d 462, 464 (Tex. App.—Fort Worth 2002), *aff'd by* 149 S.W.3d 104 (Tex. 2004) (citing TEX. GOV'T CODE ANN. § 311.026(b)).  Because neither Chapter 23 nor Chapter 23A contain specific instructions as to where the proceeds of sale should be deposited before distribution, the provisions of the Texas Rules of Civil Procedure that address partition of real estate govern the issue.  TEX. PROP. CODE ANN. § 23A.003(b)  Under Rule 770, "the proceeds [of a partition sale] *shall* be returned into the court and be partitioned among the persons entitled thereto, according to their respective interests."  TEX. R. CIV. P. 770 (emphasis added).

Here, the order states only that, "after closing fees and commissions are paid," "any remaining proceeds from the sale of the property [are to be] distributed" to the heirs in the shares

stated in the order. There is no requirement that the sale proceeds be "returned into the court" for distribution as is required by Rule 770. *See* TEX. R. CIV. P. 770. Therefore, we sustain this point of error, reverse this portion of the order, and render an order that requires the sale proceeds "be returned into the court" for appropriate distribution.

*(4)     On Remand, Lot 49's Value Must Be Determined*

Jeffrey further contends that it was error to order the sale of Lot 49 without first holding an evidentiary hearing to determine its value.[8]

When a court determines that the property that is the subject of a partition action is heirs' property as defined by Section 23A.002(5) of the Property Code, the trial court must determine the property's value.[9] TEX. PROP. CODE ANN. § 23A.006. If the parties agree on the value of the

---

[8]Kimberly summarily contends that Jeffrey failed to preserve this argument for review. However, Jeffrey's motion for summary judgment argued that the trial court had to hold an evidentiary hearing regarding the property's value, and the trial court's final order—entered without having held such a hearing—implicitly rejected his argument. Therefore, Kimberly's contention is without merit. *See* TEX. R. APP. P. 33.1(a)(1).

[9]"Heirs' property" is defined as:

(5)     . . . real property held in tenancy in common that satisfies all of the following requirements as of the filing of a partition action:

(A)     there is no agreement in a record binding all the cotenants that governs the partition of the property;

(B)     one or more of the cotenants acquired title from a relative, whether living or deceased; and

(C)     any of the following applies:

(i)     20 percent or more of the interests are held by cotenants who are relatives;
(ii)     20 percent or more of the interests are held by an individual who acquired title from a relative, whether living or deceased; or
(iii)     20 percent or more of the cotenants are relatives.

TEX. PROP. CODE ANN. § 23A.002(5).

property, "the court shall adopt that value." TEX. PROP. CODE ANN. § 23A.006(b). If the parties do not agree, the court "shall . . . order an appraisal" by an appointed, disinterested real estate appraiser, who will file the appraisal with the court to be admitted as evidence in an evidentiary hearing to determine the property's value. TEX. PROP. CODE ANN. § 23A.006(a), (d). However, if the court determines that the "evidentiary value of an appraisal is outweighed by the cost of the appraisal, the court, after an evidentiary hearing, shall determine the fair market value of the property and send notice to the parties of the value." TEX. PROP. CODE ANN. § 23A.006(c).

Here, the parties agree that (a) Lot 49 is subject to the provisions of Chapter 23A of the Texas Property Code because it is heirs' property under Section 23A.002(5) and (b) it cannot be partitioned in kind but should be partitioned by sale. The factor at issue is Lot 49's value. When Jeffrey's suit was filed in November 2019, he asserted that Lot 49 was worth approximately $275,000.00. Four months later, in Kimberly's March 24, 2020, motion for summary judgment, she agreed to the $275,000.00 valuation. However, in Jeffrey's response to her motion, he complained that Kimberly "had [had] over a year and a half to agree to a fair market value of $275,000.00," asserted that *his own* previous estimate of $275,000.00 was now "baseless and frivolous," and claimed that the value of Lot 49 was again in dispute because he no longer believed Lot 49 to be worth $275,000.00. In his subsequent pleadings, Jeffrey argued that the $275,000.00 value estimate was "stale," submitted with his motion for summary judgment an affidavit and an appraisal that valued Lot 49 at $303,000.00, and again asked the court to hold a

hearing to determine Lot 49's value.[10] No evidentiary hearing was held. In granting Kimberly's motion for summary judgment without having held an evidentiary hearing, the trial court implicitly found that the parties had agreed to the $275,000.00 value, rejected Jeffrey's argument, and as required under Section 23A.010(b), ordered Lot 49 sold "in a commercially reasonable manner at a price *no lower*" than the value of $275,000.00. (Emphasis added). Jeffrey contends that the trial court erred by failing to hold an evidentiary hearing, as there was no agreement regarding Lot 49's value. We agree.

Jeffrey's previous estimate of $275,000.00 is not binding on him as a judicial admission because that estimate was contained within a superseded pleading.[11] *See Sosa v. Cent. Power & Light*, 909 S.W.2d 893, 895 (Tex. 1995); *Sanders v. Future Com., Ltd.*, No. 02-15-00077-CV. 2017 WL 2180706, at *6 (Tex. App.—Fort Worth, May 18, 2017, no pet.). Both when Jeffrey requested the evidentiary hearing and when the trial court granted Coslett's motion for summary judgment, the parties differed as to Lot 49's value. Therefore, because there was no meeting of the minds between the parties as to value, the trial court erred by failing to conduct an evidentiary hearing as required under Chapter 23A. *See* TEX. PROP. CODE ANN. § 23A.006(a), (c), (d). Accordingly, we sustain this point of error and remand the case for an evidentiary hearing and further proceedings on this issue.

---

[10]Jeffrey failed to direct this Court to any legal authority requiring the trial court to repeatedly determine the property's value once it has been accepted or established, and we are aware of none.

[11]The facts alleged or admitted in the live pleadings of a party are accepted as true by the court and jury and are binding on the pleader. *Houston First Am. Savs. v. Musick*, 650 S.W.2d 764, 767 (Tex. 1983).

*(5)* *On Remand, the Fraudulent-Lien Claim Should Be Resolved and Attorney Fees Reassessed*

Jeffrey also argues that the trial court erred in granting the summary judgment as to his fraudulent-lien claim against Kimberly, because Kimberly's motion for summary judgment did not request judgment as to it. We agree.

In June 2020, about three months after Kimberly filed her motion for summary judgment, Jeffrey filed amended pleadings that—in addition to partition-related claims regarding the Agreement, the ownership of Lot 49, and distribution of its sale proceeds—also raised a claim against Kimberly for filing an allegedly fraudulent lien against Jeffrey's real property.[12]

A summary judgment movant may not be granted judgment on a claim or cause of action not addressed in its motion. *Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 27 (Tex. 1990); *see also Young v. Hodde*, 682 S.W.2d 236, 237 (Tex. 1984) ("the trial court erred in rendering the take-nothing judgment against Hodde's counterclaim in the absence of a motion for summary judgment by Young seeking that relief"). If a defendant moves for summary judgment on only one of four claims asserted by the plaintiff, but the trial court renders judgment that the plaintiff take nothing on all claims asserted, the judgment is final—erroneous, but final. *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001).

---

[12]The amended petitions raised claims against Ralph and/or Kimberly for (1) breach of fiduciary duty, (2) filing a fraudulent lien or claim against Lot 49, (3) common-law fraud, (4) statutory fraud, (5) breach of contract, and (6) filing a fraudulent lien against real property. However, Jeffrey's appellate pleadings only specifically challenged and briefed the dismissal of the latter claim for fraudulent lien—the claim that Kimberly filed a fraudulent lien against Jeffrey's real property. We do not address the dismissal of the remaining five claims because Jeffrey failed to adequately brief such complaints. Parties on appeal must file adequate briefs. *See* TEX. R. APP. P. 38.1(i); *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 880 (Tex. 2010). Because he failed to cite to the record and case law explaining how any of the remaining five claims were brought on his own behalf rather than that of Ray or Scott, the arguments, to the extent they were raised, are forfeited. *See Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284–85 (Tex. 1994) (recognizing long-standing rule that error may be forfeited due to inadequate briefing).

It is undisputed that Kimberly's motion for summary judgment did not address the fraudulent-lien claim. However, on June 11, 2020, Kimberly responded to Jeffrey's amended petition by filing a motion to show authority, arguing (1) that the fraudulent-lien claim, along with the other five non-partition causes of action raised in the amended petitions, were "claims on behalf of Ray Allen Rogers," and (2) that, because the claims were being brought on his behalf after his death and without the authority of his Estate, Jeffrey's counsel lacked the authority to bring the claims and the pleadings should be struck. After a hearing, the trial court granted Kimberly's motion to show authority, struck all pleadings and claims made on behalf of Ray, and, having found that it was frivolous to bring the claims without authority, awarded Kimberly $1,710.00 in attorney fees.

On appeal, Kimberly contends that her motion for summary judgment did not have to address the fraudulent-lien claim because the trial court's order on authority had already dismissed it as a claim made on behalf of Ray. Jeffrey concedes that the order on authority "struck all claims and pleadings brought . . . on behalf of Ray Allen Rogers or [his] Estate," but he argues that the "fraudulent lien or claim against real property" cause of action was a claim asserted on his own behalf and therefore was not dismissed by the court's order on authority.[13] We agree with Jeffrey.

Jeffrey alleged that (a) Kimberly "recovered an erroneous judgment" against Ray, Scott, and Jeffrey, joint and severally, "for the sum of $23,401.83"; (b) Kimberly filed "an abstract of

---

[13]Scott did not appeal from the trial court's summary judgment order. Therefore, to the extent they were raised, we do not address any argument that Scott's claims were erroneously dismissed. *See* TEX. R. APP. P. 25.1(c), 26.1, 38.1(f).

18

judgment lien," attaching the lien to all non-exempt property of the judgment debtors; (c) Jeffrey's interest in Lot 49 was posted for foreclosure in March 2020; (d) Jeffrey paid the judgment in full; and (e) Kimberly refused to provide him with a recordable release of the judgment lien and continued to use the lien to "force" Jeffrey to pay additional funds to avoid foreclosure. While this claim might also be related to claims of others, it states a claim on Jeffrey's behalf because it alleges that Kimberly's allegedly fraudulent actions caused a foreclosure action against Jeffrey's interest in Lot 49. Therefore, the court's order dismissing claims filed on Ray's behalf did not dismiss those filed on Jeffrey's interests. Because the claim was not referenced in Kimberly's motion for summary judgment, summary judgment was erroneous as to Jeffrey's interests. *See Black*, 797 S.W.2d at 27. Accordingly, we sustain this point of error, reverse the summary judgment as to this claim, and remand the claim for further proceedings on Jeffrey's claim against Kimberly alleging a fraudulent lien.

The trial court awarded Kimberly attorney fees, in addition to her previous award for frivolous claims, but neither the record nor the order reflects the legal basis for the subsequent award. Because this Court's opinion reverses portions of the trial court's final order, we also remand the issue of attorney fees so that the trial court may reconsider any award in light of this opinion and further proceedings.

For the reasons stated above, we make these rulings:

(1)     We hold that the 462nd Judicial District Court of Denton County had authority to issue the instant judgment, because (a) Jeffrey failed to preserve his challenge to the transfer of the case from the 362nd Judicial District Court of Denton County to the 462nd Court and (b) the

19

further transfer of the case to the 431st Judicial District Court of Denton County did not, on this record, deny the 462nd Court the power to rule.

(2) We hold that the judgment must account for post-Agreement transfers, because, although the trial court's interpretation of the Agreement's allocation of ownership in Lot 49 was correct, the order's distribution of the sale proceeds did not account for the post-Agreement transfers that were established by the summary-judgment evidence.

(3) We hold that the trial court must receive a report of a sale from the appointed broker in compliance with Sections 23A.010 and 23A.011 of the Texas Property Code, receive the sale's net proceeds into the registry of the court, and distribute those net proceeds, under the law applicable to heirs' property such as Lot 49, as set out above, by allocating 15/16 of those net proceeds to Jeffrey and 1/16 to Kimberly.

(4) We hold that, on remand, Lot 49's value must be determined by an evidentiary hearing as set out above.

(5) We hold that, on remand, the fraudulent-lien claim should be resolved, and attorney fees should be reassessed in light of this opinion and further proceedings.

Based on the above rulings, we make the following dispositions in this case:

(1) We affirm the trial court's interpretation of the Agreement's allocation of ownership in Lot 49, but, because the judgment must account for post-Agreement transfers, we reverse the summary judgment as to the distribution of proceeds and render a judgment that the sale proceeds must be distributed 15/16 to Jeffrey and 1/16 to Kimberly;

(2)     We further render a judgment requiring the appointed broker to provide a report to the trial court in compliance with Sections 23A.010 and 23A.011 and requiring that the sale's net proceeds be received into the registry of the trial court for distribution in accordance with this opinion;

(3)     We reverse the judgment as to the value it assigned to Lot 49 and remand the issue for an evidentiary hearing to determine Lot 49's value; and

(4)     We reverse and remand the summary judgment as to the fraudulent-lien claim and as to attorney fees for further proceedings consistent with this opinion.


Josh R. Morriss, III
Chief Justice


Date Submitted:     October 14, 2021
Date Decided:     April 6, 2022